1   WO

2

3

4

5

6

7                IN THE UNITED STATES DISTRICT COURT

8                    FOR THE DISTRICT OF ARIZONA

9

10

11

12  Fidelity National Financial, )
    Inc., a Delaware            )
13  corporation, Fidelity       )
    Express Network, Inc., a    )
14  California corporation,      )
                                )
15            Plaintiffs,        )   No. MC 11-00072-PHX-RCB
                                )
16        vs.                   )        O R D E R
                                )
17  Colin H. Friedman, *et al.*  )
                                )
18            Defendants.        )
    _____ )
19

20       This dispute, now in its second decade, pertains to the

21  latest attempt by plaintiffs, Fidelity National Financial,

22  Inc. and Fidelity Express Network, Inc. ("Fidelity"), to

23  enforce a judgment.  Fidelity obtained that judgment which,

24  with interest, now totals over $10 million dollars, against

25  defendants Colin H. Friedman, Hedy Kramer Friedman, Farid

26

27

28

1   Meshkatai, and Anita Kramer Meshkatai[1] following a trial in

2   the United States District Court for the Central District of

3   California (the "California judgment").  California, as the

4   rendering court, entered that judgment on July 12, 2002.  As

5   28 U.S.C. § 1963 allows,  Fidelity registered its California

6   judgment in this Arizona district court.  The Certification

7   of Judgment issued by the California court, along with an

8   order of that court allowing Fidelity to register its

9   judgment in this district court, although the action was on

10  appeal, was entered here on November 18, 2002 (the "First

11  Arizona Registered Judgment").  In accordance with A.R.S.

12  § 12-1551(B), that judgment would "become[] unenforceable

13  after five years from the date of entry unless action [wa]s

14  taken to renew it."  Fidelity National Financial, Inc. v.

15  Friedman, 855 F.Supp.2d 948, 963 (D.Ariz. 2012) ("Fidelity

16  V") (quoting In re Smith, 209 Ariz. 343, 101 P.3d 637) (other

17  citation omitted).  Put differently, absent renewal, the

18  Arizona registered judgment would have expired on November

19  18, 2007.

20      Fidelity attempted renewal on April 5, 2007, by filing

21  what this court has previously referred to as "the 2007

22  Certification[.]"  Fidelity V, 855 F.Supp.2d at 954.

23  Eventually, this court vacated that 2007 Certification,

24

25  ───────────────────

   [1]      More specifically, that judgment was rendered against "Colin H.
26  Friedman, individually and as trustee of the Friedman Family Trust UDT,
   ..., Hedy Kramer Friedman, individually and as trustee of the Friedman
27  Family Trust UDT, . . . , Farid Meshkatai, and Anita Kramer Meshkatai,
   individually and as trustee of the Anita Kramer Living Trust . . . , and
28  each of them, jointly and severally[.]" Certification (Doc. 1) at 2-3.

1  holding that although Fidelity permissibly re-registered the

2  First Arizona Registered Judgment pursuant to 28 U.S.C.

3  § 1963, that re-registration was not timely under Arizona

4  law.  See id. at 968-979.

5      In the interim, on May 26, 2011, Fidelity filed a

6  certification of the California Judgment in the United States

7  District Court for the Western District of Washington (the

8  "Washington Registered Judgment"[2]).  Fidelity Nat. Financial,

9  Inc. v. Friedman, No. 2:11-mc-0072 (W.D.Wash.).  Several

10 months later, on July 7, 2011, Fidelity filed the Washington

11 Registered Judgment in this court (the "Second Arizona

12 Registered Judgment"[3]).  Currently pending before the court is

13 defendants' "motion . . . for relief from judgment pursuant to

14 Rule 60(B) [sic] of the Federal Rules of Civil Procedure;

15 and/or to vacate the certification of judgment for

16 registration in another district[,]" Mot. 9 at 1:14-17

17 (emphasis omitted), "and relieve the[m] . . . from any

18 judgment created as a result of that filing."  Id. at 9:21-

19 23.[4]

20                     ***Background***

21     The long and somewhat convoluted  history of Fidelity's

22 attempts to enforce the California judgment have been

23

---

24      [2]    This designation is for convenience only and it shall not be

25 accorded any legal significance.

26      [3]    Again, this designation is for convenience only and it shall not be accorded any legal significance.

27      [4]    For ease of reference, all citations to page numbers of docketed

28 items are to the page assigned by the court's case management and electronic case filing (CM/ECF) system.

1 chronicled in prior decisions of this court and others,
2 familiarity with which is presumed.  More recently, as just
3 mentioned, on May 26, 2011,  in the Western District of
4 Washington, Fidelity filed a "Certification of Judgment For
5 Registration In Another District[.]" <u>Fidelity</u>, No. 2:11-mc-
6 0072 (W.D.Wash.) (Doc. 1) That Certification, dated March 7,
7 2011, was issued by the Clerk of the California court, and
8 indicated that a certified copy of the California judgment was
9 attached thereto.  <u>Id.</u>  The defendants were not served with
10 the Washington Registration until nearly nine months later  –
11 on December 1, 2011.  <u>See</u> Jike Decl'n (Doc. 16-1) at 2, ¶ 4,
12 and exh. A thereto (Doc. 16-2) at 2-3.

13      Thereafter, on July 7, 2011, in this Arizona district
14 court, Fidelity filed the exact same Certification of
15 Judgment, attaching the California judgment, which it had
16 previously filed in the Washington Court.  That particular
17 certification was certified by the Clerk of the Court for the
18 Western District of Washington, however.  Certification (Doc.
19 1) at 1.  Again, there was a delay in service upon the
20 defendants.  They were not served with the Second Arizona
21 Registered Judgment until nearly five months later, on
22 December 1, 2011.  <u>See</u> Jike Decl'n (Doc. 16-1) at 2, ¶ 4, and
23 exh. A thereto (Doc. 16-2) at 2-3.  Fidelity has not executed
24 upon either the Washington Registered Judgment or the Second
25 Arizona Registered Judgment as against defendants' property,
26 <u>id.</u> at ¶¶ 2 and 3; and, it is not attempting to do so at this
27 juncture.
28      In the meantime, Fidelity timely renewed the California

-4-

1  judgment in that rendering court,[5] extending the period of

2  enforceability for ten years. <u>See</u> Cal. Code Civ. Proc.

3  § 683.120(b).  Consequently, Fidelity's California judgment

4  still is enforceable there.   In reliance upon the renewed

5  California judgment, the Washington court granted Fidelity's

6  *ex parte* application to extend the Washington Registered

7  Judgment.   <u>See</u> <u>Fidelity</u>, No. 11-mc-00072 (W.D.Wash.), Ord.

8  (Doc. 3).   It thus appears that Fidelity has "an additional

9  ten years during which an execution, garnishment, or other

10 legal process may be issued[]" as to the Washington Registered

11 Judgment, RCW 6.17.020(3), whereas the First Arizona

12 Registered Judgment is no longer enforceable here.

13                      ***Summary of Arguments***[6]

14     The primary thrust of defendants' motion is that the

15 court should vacate the Second Arizona Registered Judgment

16 because the "Washington [Registered] Judgment . . . is not a

17 'new' Judgment capable of re-registration" in this court.

18 Mot. (Doc. 9) at 8:13-14.   Relatedly, defendants argue that

19 the Washington Registered Judgment "is void for lack of due

20 process and personal jurisdiction over" them, and hence it

21 cannot be registered here.  <u>Id.</u> at 4:1-2, ¶ 12.

22     Relying solely upon <u>Del Prado v. B.N. Dev. Co.</u>, 602 F.3d

23 660 (5th Cir. 2010) ("<u>Del Prado II</u>"), and pursuant to 28 U.S.C.

---

25     [5]     <u>Fidelity</u>, No. 11-mc-00072 (W.D.Wash.), "Ex Parte Order Extending
   Judgment" (Doc. 3) at 2.

27     [6]     Given the court's intimate familiarity with this action and because the
   issues have been fully briefed, in its discretion the court denies the parties'
   request for oral argument as it would not aid the decisional process. <u>See</u>
28 Fed.R.Civ.P. 78(b); <u>Partridge v. Reich</u>, 141 F.3d 920, 926 (9th Cir. 1998).

1  § 1963, Fidelity counters that it properly successively

2  registered the Washington Registered Judgment in this court.

3  Moreover, Fidelity asserts that "any perceived deficiency" in

4  the Washington Registered Judgment should be resolved by that

5  court.  Resp. (Doc. 16) at 2:21.

6  ***Discussion***

7  ***I.  Requests for Judicial Notice***

8      Before addressing these substantive arguments, the court

9  must consider the parties' separate Requests for Judicial

10  Notice ("RJN") made pursuant to Fed.R.Evid. 201.  Although

11  the parties  cite to subsection (d) of that Rule, clearly that

12  was not their intent.  Rule  201(d) governs the timing of when

13  a court may take judicial notice, not the substantive basis

14  for such a request.  From the content of their respective

15  requests, clearly the parties intended to rely upon Rule

16  201(b)(2).  That Rule allows a court to take judicial notice

17  of "a fact that is not subject to reasonable dispute because

18  it . . . can be accurately and readily determined from sources

19  whose accuracy cannot be reasonably question."  Fed. R. Evid.

20  201(b)(2).

21      Here, the sources of the parties' RJNs are all court

22  filings in this or several closely related actions.  Because

23  these filings are all matters of public record, they are

24  properly the subject of judicial notice.  See, e.g., Terenkian

25  v. Republic of Iraq, 694 F.3d 1122, 1137 n. 8 (9th Cir. 2012)

26  (citation omitted) (granting RJNs "of certain pleadings and

27  court filings in the New York litigation submitted" by the

28  parties); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d

1  741, 746 n. 6 (9th Cir. 2006) ("court filings and other matters

2  of public record" were "readily verifiable and, therefore, the

3  proper subject of judicial notice[]"); <u>Kourtis v. Cameron</u>, 419

4  F.3d 989, 994 n. 2 (9th Cir. 2005) (citation omitted) ("court

5  records from related proceedings can be taken into account

6  without converting a motion to dismiss into a summary judgment

7  motion[ ]"), *overruled on other grounds*, <u>Taylor v. Sturgell</u>,

8  553 U.S. 880, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008).

9  Therefore, the court grants the parties' respective RJNs

10  (Docs. 14 and 17).

11  ***II.  Second Arizona Registration***

12      First, the defendants broadly contend that the court must

13  vacate the Second Arizona Registered Judgment because "Arizona

14  law does not allow for re-registration of the same judgment."

15  Mot. (Doc. 9) at 12:8-9; at 14:17-18 (emphases omitted).

16  Arizona law does not apply, Fidelity counters, because the

17  issue is not one of execution upon a judgment.  Rather, from

18  Fidelity's perspective, the issue pertains to registration

19  under federal law, and 28 U.S.C. § 1963 in particular.  Thus,

20  Fidelity argues that the Second Arizona Registration is

21  governed strictly by federal law.

22      ***A.  Governing Law***

23      The court agrees with the defendants that Rule 69(a)

24  "provid[es] that the procedure on execution is to be in

25  accordance with the procedure of the state in which the

26  district court is located at the time the remedy is sought."

27  <u>See</u> <u>Hilao v. Estate of Marcos</u>, 536 F.3d 980, 987 (9th Cir.

28  2008).  The court cannot agree, however, with defendants'

1 extrapolation from that Rule  -- that "Arizona law governs *all*

2 *proceedings* with respect to the [Second] Arizona" Registered

3 Judgment.  Mot. (Doc. 9) at 12:15-16 (emphasis added).

4      There is nothing in the plain language of Rule 69 to

5 support such an expansive reading of that Rule.  In fact, Rule

6 69(a)(1) carefully limits its application to execution of

7 judgments, stating in pertinent part:

8            The procedure on execution—and in
             proceedings supplementary to and in
9            aid of judgment or execution—must
             accord with the procedure of the
10           state where the court is located[.]

11 Fed.R.Civ.P. 69(a)(1).  The issues herein do not pertain to

12 such proceedings.

13      Moreover, Rule 69(a)(1) is equally clear that "a federal

14 statute governs to the extent it applies."  Id.  In the

15 present case, the primary issue is whether the Washington

16 Registered Judgment "create[d] a wholly new judgment that can,

17 in turn, be re-registered to create a wholly new judgment" in

18 this jurisdiction, despite the expiration of the First Arizona

19 Registered Judgment and its untimely re-registration.  See De

20 Leon v. Marcos, 742 F.Supp.2d 1168, 1172 (D.Colo. 2010) ("De

21 Leon I"), vacated and remanded on other grounds, 659 F.3d 1276

22 (10th Cir. 2011) ("De Leon II").  Resolution of that issue

23 implicates section 1963 - the federal registration of

24 judgments statute.  Thus, there is no merit to the defense

25 argument that based upon Rule 69(a), Arizona law governs "all

26 proceedings" as to the Second Arizona Registered Judgment.

27 See Mot. (Doc. 9) at 12:16.

28      In addition, the court fails to see defendants' perceived

- 8 -

1  inconsistency between section 1963's provision that "[t]he

2  procedure prescribed under this section is in addition to the

3  other procedures provided by law for the *enforcement* of

4  judgments[,]" and Fidelity's argument that only federal law

5  applies here.  <u>See</u> 28 U.S.C. § 1963 (emphasis added).  The

6  defendants are overlooking section 1963's unequivocal

7  "enforcement" language, just quoted, which is not an issue at

8  this juncture.

9       Likewise, there is no merit to defendants' contention

10  that this Court *must* apply Arizona law in reviewing the issues

11  on this Motion[,]" because purportedly  "the Ninth Circuit has

12  unequivocally recognized the applicability of state law in

13  dealing with the *registration*, renewal and enforcement of

14  judgment in the district in which the judgment is sought to be

15  enforced."  Reply (Doc. 20) at 7:18; and 7:3-5 (emphasis

16  added).  Significantly, in not one of the cases to which the

17  defendants cite or mention did the court apply state law in

18  "dealing with registration[.]"[7]  <u>See</u> <u>id.</u> at 7:4.  Those courts

19  dealt, instead, with the application of state law in the

20  context of execution, and "proceedings supplementary to and in

21  aid of judgment or execution[,]" Fed.R.Civ.P. 69(a)(1), such

22  as enforcement of judgments.  <u>See</u> <u>Fidelity Nat. Financial Inc.</u>

23  <u>v. Friedman</u>, 602 F.3d 1121, 1122 (9th Cir. 2010) (emphasis

24  added) (certifying to the Arizona Supreme Court two issues

25  regarding whether Fidelity's actions "were sufficient under

26

27       [7]      Nor has the court's independent research unearthed any Ninth

28  Circuit case law applying state law when dealing with federally registered
    judgments.

1  Arizona law to *renew* the prior registration of a judgment");

2  <u>Hilao</u>, 536 F.3d at 987-988 (emphasis added) (Rule 69(a)

3  "provid[es] that the *procedure on execution* is to be in

4  accordance with the procedure of the state in which the

5  district court is located at the time the remedy is sought.");

6  <u>Gagan v. Sharar</u>, 376 F.3d 987, 988 (9th Cir. 2004) (emphasis

7  added) ("This case concerns *execution* in a community property

8  state of a judgment obtained in a common law state."); and

9  <u>Mantanuska Valley Lines, Inc. v. Molitor</u>, 365 F.2d 358, 359-60

10 (9th Cir. 1966)(citation omitted) (emphasis added) ("[T]he

11 *enforcement of a judgment* of a sister state may be barred by

12 application of the statute of limitations of the forum

13 state.") Thus, especially with no case authority to support

14 the defendants' contrary argument, the court is not convinced

15 that Arizona rather than federal law applies to the

16 registration issues herein.

17        ***B. Federal Law***

18        Section 1963 states, in relevant part:

19              A judgment in an action for the recovery of
                money or property entered in any . . . district
20              court, . . . may be registered by filing a
                certified copy of the judgment in any other
21              district[,] when the judgment has become final
                by appeal or by expiration of the time for
22              appeal[.]. . . A judgment so registered shall
                have the same effect as a judgment of the district
23              court of the district where registered and
                may be enforced in like manner. . . .
24

25 28 U.S.C. § 1963.  Here, the issue is whether a judgment

26

27

28

1  registered in a federal court pursuant to that statute[8]
2  creates a new judgment that can, in turn, be "re-registered"
3  in a second federal court, although that "re-registered"
4  judgment previously had been registered in that second court,
5  where it had  expired and was not timely re-registered.  This
6  novel issue appears to be one of first impression.

7      With conflicting results, three other courts have
8  addressed the narrower issue of whether "registration of a
9  judgment pursuant to 28 U.S.C. § 1963 create[s] a wholly new
10 judgment that can, in turn, be re-registered to create wholly
11 new judgments in other jurisdictions[.]" See De Leon I, 742
12 F.Supp.2d at 1172 (noting that this issue "is the same one
13 faced by the Northern District of Texas [in Del Prado v. B.N.
14 Dev. Co., 4:05-CV-234-Y (N.D. Tex. Jan. 9, 2009) ("Del Prado
15 I")] and the 5th Circuit [in Del Prado II]").  The district
16 courts in De Leon I and Del Prado I, answered in the negative,
17 but the Fifth Circuit answered in the affirmative in Del Prado
18 II.

19     The Fifth Circuit's Del Prado II decision is the sole
20 basis for Fidelity's argument that section 1963 permits what
21 that Court has termed "'successive registration.'"  See Del
22 Prado II, 602 F.3d at 662.  Strenuously opposing application
23 of Del Prado II, the defendants argue that Fidelity's reliance
24 thereon is "misplaced[]" because that case is distinguishable.

25

26     [8]    There is nothing on the face of either the May 26, 2011,
27 Certification of Judgment filed in Washington, or on the Certification of
   Judgment filed in this court on July 7, 2011, indicating the bases for
28 those filings.  The court adopts the parties' operating assumption that 28
   U.S.C. § 1963 was the statutory basis for both.

1  Mot. (Doc. 9) at 14:22.  Thus, regardless of whether this
2  court finds the Del Prado II reasoning "persuasive," the
3  defendants contend it simply has no applicability here. See
4  id. at 16:27.  Additionally, the defendants point to De Leon
5  I, where the district court found, inter alia, that Del Prado
6  II "incorrectly applied prior precedent[.]" De Leon I, 742
7  F.Supp.2d at 1176.  Moreover, from defendants' viewpoint, the
8  court's  rationale in De Leon I is consistent with Arizona
9  law, which requires strict compliance with renewal of judgment
10 statutes.

11     With equal vigor, Fidelity argues that Del Prado II is
12 sufficiently analogous to the present case such that its
13 reasoning should apply here.  Fidelity thus maintains, based
14 upon the Fifth Circuit's Del Prado II decision and section
15 1963, that it permissibly "successively"  re-registered its
16 Washington Registered Judgment in this Arizona district court.

17     The parties' divergent views of Del Prado II, especially
18 when coupled with the conflict between Del Prado II and De
19 Leon I, warrant a close examination of each.  The court will
20 also look to the district court's decision in Del Prado I.
21 Ordinarily, this court would not consider such a case because
22 of its reversal on appeal.  Given the paucity of relevant case
23 law, however, and because the Del Prado I's reasoning aligns
24 with what this court finds to be the thorough and thoughtful
25 analysis in De Leon I, Del Prado I also is noteworthy.

26     The genesis for both Del Prado and De Leon was a class
27 action commenced in the District of Hawaii, claiming human
28 rights violations by now deceased Ferdinand Marcos, the former

president of the Philippines.  Following a trial, in 1995, the Hawaii District Court entered a nearly $2 billion judgment in favor of the class.  Pursuant to 28 U.S.C. § 1963, in early 1997, the class registered the Hawaiian judgment in the Northern District of Illinois.  In the meantime, because the class did not timely extend the judgment rendered in Hawaii, by operation of Hawaiian law, that judgment was extinguished on February 2005.  Hilao, 536 F.3d 980.

In April 2005, evidently following the transfer of the Hawaii judgment to the Northern District of Texas, the class commenced the Del Prado action.  It sought a declaration that certain real property located in Texas was beneficially owned by the Marcos estate.  The class also sought to execute and foreclose upon that property in partial satisfaction of the judgment rendered in Hawaii.  During the pendency of that Texas enforcement proceeding, the  Illinois registered judgment became dormant.  See 735 ILL. Comp. Stat. 5/12-108(a).  Because of that, and having no enforceable judgment in Hawaii, pursuant to Illinois law, the class filed a petition for revival of the Illinois registered judgment.  The petition was granted and on September 4, 2008, the Clerk of the Court for the Northern District of Illinois entered the revived judgment pursuant to Fed.R.Civ.P. 58.

Shortly thereafter, on October 7, 2008, pursuant to 28 U.S.C. § 1963, the class registered the revived Illinois judgment in the District of Colorado.  Likewise, the next day, in the Del Prado action, the class registered the revived Illinois judgment in Texas.  On September 16, 2009, the class

1  commenced an action in Colorado seeking partial satisfaction

2  of the Hawaii judgment against Colorado real property which

3  allegedly had been beneficially owned by the Marcos estate

4  ("the De Leon action").

5      **_1.  Del Prado I_**

6      The district court in Del Prado I rejected plaintiffs'

7  argument that although the statute of limitations had run in

8  Hawaii, the rendering court, the Illinois registered judgment

9  created a new, independent judgment that could be re-

10 registered in the Texas district court pursuant to 28 U.S.C.

11 § 1963.  In rejecting that argument, the court looked first to

12 the "plain language" of that statute.  Del Prado I, Doc. 237

13 at 7.  More specifically, the Del Prado I court found section

14 1963, which on its face "allows for the registration of a

15 'judgment in an action for the recovery of money or property

16 entered' in any district court, after 'such judgment has

17 become final by appeal or expiration of the time for

18 appeal[,]'"  . . . demonstrates that it is the *initial*

19 *judgment on the merits* from the rendering court – i.e., the

20 'judgment in an action for the recovery of money or property'

21 – *that may be registered*."  Id. at 7 (quoting 28 U.S.C.

22 § 1963) (emphasis added) (citations omitted).

23     Shifting from the text of section 1963, the Del Prado I

24 court also discussed the "scant . . . interpretative case law

25 surrounding" that statute.  See Euro-American Coal Trading,

26 Inc. v. James Taylor Mining, Inc., 431 F.Supp.2d 705, 707 n. 7

27 (E.D.Ky. 2006).  Factoring prominently in that discussion was

28 Stanford v. Utley, 341 F.2d 265 (8th Cir. 1965) (Blackmun, J.),

the seminal case construing section 1963, as well as <u>Home Port
Rentals, Inc. v. Int'l Yachting Group, Inc.</u>, 252 F.3d 399 (5th
Cir. 2001), and the Ninth Circuit's <u>Hilao</u> decision.  After
examining those cases, the <u>Del Prado I</u> court recognized that
"[u]ltimately, § 1963 *may* in fact allow registration of the
rendering court's judgment in more than one district."  <u>Del
Prado I</u>, Doc. 237 at 11 (emphasis added)(citing <u>Board of
Trustees v. Elite Erectors, Inc.</u>, 212 F.3d 1031, 1034 (9th Cir.
2000)).  At the same time, however, as the <u>Del Prado I</u> court
was quick to point out, "the *Stanford*, *Home Port Rentals*, and
other courts to have addressed the issue acknowledge '[t]hat
the registered judgment might not be congruent with a new
judgment of the registration court for every purpose other
than enforcement.'" <u>Id.</u> (citation omitted).  Buttressed by the
Ninth Circuit's decision in <u>Hilao</u>, the district court
concluded <u>Del Prado I</u> was "such a case."  <u>Id.</u>

   <u>Hilao</u> and <u>Del Prado I</u> did raise different issues.  The
issue in <u>Hilao</u> was "whether registration extended the statute
of limitations that was applicable in the rendering court[,]"
whereas the issue in <u>Del Prado I</u> was "whether a registered
judgment may itself be registered despite the running of the
statute of limitations in the rendering court[.]" <u>Id.</u>
Nonetheless, the <u>Del Prado I</u> court found that those issues
raised the "same . . . concern[.]" <u>Id.</u>  In particular, either
way, adopting plaintiffs' position would mean "'that a federal
judgment is free of state limitations and can be enforced
forever.'" <u>Id.</u> at 11-12 (quoting <u>Hilao</u>, 536 F.3d at 987).
"Absent clear language in . . . section [1963] or binding

1  precedent requiring it to do so[,]" the district court in <u>Del</u>
2  <u>Prado I</u> declined to give "such an unbounded effect[]" to that
3  statute.  <u>Id.</u> at 12.

### 2.  *Del Prado II*

5      Reversing <u>Del Prado I</u>, and approving of "successive
6  registration," the Fifth Circuit held: "Because the Illinois
7  registered judgment was equivalent to a new federal judgment
8  with the same status as a judgment on a judgment, it was also
9  capable of being successively registered and enforced under §
10 1963 in the Northern District of Texas."  <u>Del Prado II</u>, 602
11 F.3d at 661 and 669.  The Fifth Circuit, like the district
12 court, looked to the text of section 1963.  But, unlike the
13 district court, the Fifth Circuit selectively read in
14 isolation only a small part of section 1963. Not surprisingly
15 then, the Fifth Circuit's statutory interpretation differed
16 from the district court's.  More specifically, the Fifth
17 Circuit read part of "[t]he final sentence of  § 1963[9] [as]
18 "clearly stat[ing] that  "a registered judgment has 'the same
19 effect as a judgment of the district court of the district
20 where registered and may be enforced in like manner[,]' . . .
21 to mean that once the Hawaiian judgment was registered in
22 Illinois in 1997, [it] had the same effect as any judgment
23 rendered in the Northern District of Illinois and could be
24 enforced as a judgment rendered in the Northern District of
25 Illinois."  <u>Id.</u> at 665 (footnote omitted and footnote added).

26

27      [9]      More accurately, the Court was reading the final sentence of the
28 first paragraph of section 1963, as opposed to the final sentence of that
whole statute.

- 16 -

1    The Fifth Circuit, likewise, interpreted cases such as
2  Stanford, its own earlier Home Port Rentals decision, and
3  Hilao, differently than did the district court.  The Fifth
4  Circuit found that those cases, like section 1963, "support
5  the principal [sic] that a registered judgment has the same
6  effect as a rendered judgment." Id. at 666.  Lastly,
7  "reinforce[d]" by Full Faith and Credit concepts, the Del
8  Prado II Court rejected defendants' argument that the Illinois
9  registered judgment should be "treated differently than [a]
10 judgment on a judgment[.]" Id. at 668.  The Court rejected
11 that argument, inter alia, because defendants did not show
12 lack of notice or that they were impeded from raising any
13 defense when the Illinois registered judgment was successfully
14 registered in Texas.
15     Putting aside for the moment the Fifth Circuit's
16 rationale, the court agrees with the defendants that given the
17 distinctions outlined below between Del Prado II and the
18 present case, Del Prado II does not control here.  The first
19 and most critical distinction is that unlike Fidelity, before
20 it attempted to register the Illinois judgment in Texas, the
21 judgment creditor in Del Prado II had not validly registered
22 the original Hawaii judgment in Texas, and allowed it to
23 expire there.  Consequently, the Fifth Circuit had no reason
24 to address the specific issue confronting this court:  whether
25 the Washington Registered Judgment created a new judgment that
26 can, in turn, be successively re-registered even though the
27 First Arizona Registered Judgment expired and it was not
28 timely re-registered here.  In fact, "[n]o case cited by Del

- 17 -

1   *Prado* [*II*] involves," as here, "a foreign judgment, registered

2   in one state, and an attempted registration in yet a third

3   state."   See De Leon I, 742 F.Supp.2d at 1175 n. 6.

4       Del Prado II is distinguishable on another basis.   There,

5   the defendants argued that the revived Illinois registered

6   judgment did not "qualify as an independent judgment because

7   it was not 'entered'" in the Illinois district court in

8   accordance with Fed.R.Civ.P. 58.   Del Prado II, 602 F.3d at

9   665.   Finding "no merit" to that argument, the Fifth Circuit

10  pointed out that "the revived Illinois registered judgment was

11  entered by the Clerk of the Court in the Northern District of

12  Illinois as a separate document entitled 'Judgment in a Civil

13  Case.'"   Id.

14      Fidelity cannot avail itself of that logic, however,

15  because the Western District of Washington Court did not

16  separately enter any such document.   Rather, as the docket

17  sheet reflects, the predicate filing in that court was the

18  "Certification of Judgment for Registration in Another

19  District[]" issued by the rendering California court.   See

20  Defs.' RJN (Doc. 14), exh. G thereto (Doc. 14-7) at 3.   Nor,

21  as more fully explained herein, did Del Prado II raise the

22  specter, as does this action, that successive registration

23  would conflict with state law.   These differences demonstrate,

24  once again, "that Fidelity's reliance upon *Del Prado* [*II*] is

25  misplaced."   See Fidelity V, 855 F.Supp.2d at 970 (internal

26  quotation marks and citation omitted).

27      ***3.  De Leon I***

28      Even overlooking those distinctions (which it is not),

-18-

1  the court flatly rejects Fidelity's argument that <u>Del Prado</u>
2  <u>II</u>'s "reasoning . . . applies here." Resp. (Doc. 16) at 5:19.
3  The court rejects that argument because it, too, "respectfully
4  disagrees with the [Fifth] Circuit's reasoning[]" in <u>Del Prado</u>
5  <u>II</u>. <u>De Leon I</u>, 742 F.Supp.2d at 1172. Fidelity suggests that
6  this court should disregard <u>De Leon I</u> because "it has been
7  reversed[,]" and the Tenth Circuit found that decision to be
8  "void." Resp. (Doc. 16) at 6:26-27, n. 3 (citation omitted).
9  Actually, because the Tenth Circuit did not reach the merits,
10 it did not reverse the district court. Rather, it vacated and
11 remanded.

12     Regardless, this court is acutely aware that the Tenth
13 Circuit found <u>De Leon I</u> to be "void" because it was issued
14 after the parties' filing of a stipulation of dismissal, "and
15 therefore in the absence of jurisdiction." <u>De Leon II</u>, 659
16 F.3d at 1284 (citation omitted). Despite the foregoing, and as
17 previously noted, this court concurs with <u>De Leon I</u>'s rigorous
18 and sound analysis, wherein it found that the judgment
19 creditor could not re-register the Illinois revived judgment
20 in Colorado so as to support that enforcement action.

21     Several aspects of <u>De Leon I</u> heavily inform this court's
22 conclusion that, likewise, the Washington Registered Judgment
23 cannot be successfully re-registered in this Arizona district
24 court. Briefly, they are: (1) the nature of a  judgment which
25 can be registered pursuant to 28 U.S.C. § 1963; (2) the
26 attributes of a judgment registered under that statute; and
27 (3) the reasons why registered and domestic judgments are not
28 equivalent for all purposes. The court will discuss these

seriatim.

The first persuasive aspect of De Leon I is its conclusion "that *only* an original judgment, issued by a court upon the substantive merits of an adversarial dispute, can be registered pursuant to 28 U.S.C. § 1963[.]" De Leon I, 742 F.Supp.2d at 1172.  The starting point for that conclusion was "the fundamental legal axiom that a judgment is 'the final determination of an action,' that embodies a court's adjudication of 'a claim pressed and resisted (or the opportunity for resistance) by adversaries'[.]"  Id. (10 Wright, Miller & Kane, *Federal Practice and Procedure*, Civil 3d Ed., § 2651, *quoting* In the Matter of Fidelity Tube, 167 F.Supp. 402, 404 (D.N.J. 1958)) (other citation omitted).

Scrutinizing the text of 1963, the court in De Leon I explained, the language "authoriz[ing] registration of a 'judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade[]' . . . anticipates two requirements."  Id. at 1173.  The first is "that a judgment has been *entered* by a court (as compared to a 'judgment' that comes into effect by being registered)[.]"  Id. (emphasis in original).  The second requirement is that such a judgment "be entered in an action for the *recovery o*[*f*] *money or property* (in essence, reflecting the adjudication of a claim for tangible, not simply declaratory, relief)."  Id. (emphasis in original).  That construction of section 1963, as the De Leon I court persuasively reasoned, "is consistent with the fundamental nature of a judgment —- a document reflecting

the determination of a claim on its merits." Id.

In juxtaposition, a registered judgment "is simply the perfection of an existing judgment in another jurisdiction so as to permit foreign enforcement." Id. This court agrees that "[i]nterpreted in this way, [section 1963] would appear to provide that *only* an original judgment resolving an adversarial proceeding for tangible relief can be registered in another jurisdiction." Id. (emphasis added).

The district court in Del Prado I did not so closely parse section 1963; but, as mentioned earlier, it similarly construed the plain text of that statute, finding that only the original judgment of the rendering court, "in an action for the recovery of money or property[,]" may be registered. Del Prado I, Doc. 237 at 7 (internal quotation marks and citations omitted). The court in Del Prado I bolstered that reading of section 1963 by astutely observing that "it could not seriously be contended that when a clerk enters the judgment of another district court on the docket of his own court he has created a final judgment that may be appealed pursuant to 28 U.S.C. § 1291." Id. at 8 (citing, *inter alia*, 28 U.S.C. § 1963) (allowing registration only after the rendering court's judgment is final).

Based upon the straightforward and unequivocal language of 28 U.S.C. § 1963, this court agrees with the De Leon I and Del Prado I courts: that statute permits registration in another district only of judgments which have been entered by the rendering court, and which were entered following the "adjudication of a claim for tangible . . . relief[.]" See De Leon I, 742 F.Supp.2d at 1173. The Washington Registered

Judgment fits neither requirement.  There was no entry of a judgment in the Western District of Washington, as previously explained.

Additionally, the Washington Registered Judgment is  not "an original judgment, issued by a court upon the substantive merits of an adversarial dispute[.]" See id. at 1172.  Rather, the original judgment was issued and entered in the California Court following a jury trial.  Consequently, the Washington Registered Judgment is "simply the perfection of [the] existing [California] judgment in another jurisdiction so as to permit foreign enforcement." See id.  Thus, regardless of defendants' due process and personal jurisdiction concerns, the Washington Registered Judgment cannot be re-registered in this court because it is not a judgment capable of registration within the meaning of section 1963.

The De Leon I court's analysis of the "attributes" of a registered judgment is just as compelling as its textual argument, and further convinces this court that the Washington Registered Judgment cannot be successfully re-registered in this court.  See id.  The Fifth Circuit in Del Prado II held that the registration of a judgment under section 1963 creates a new judgment that has "all of the attributes of a judgment rendered by [the jurisdiction of registration]," that, in turn "may be re-registered" in other jurisdictions.  Del Prado II, 602 F.3d at 667 (emphasis added).  Disagreeing, the court in De Leon I recognized that "although one might equate a registered judgment with a domestic judgment for purposes of enforcement in the state of registration, there is no particular reason to

conclude that a registered judgment has all of the collateral features of a domestic judgment, such the ability to be (re-)registered in yet another jurisdiction." De Leon I, 742 F.Supp.2d at 1175.

The court arrived at that conclusion after dissecting Stanford, "[t]he seminal case grappling with the issue" of "what attributes [a] registered judgment has[,]" and also looking to the Fifth Circuit's "own prior reasoning" in Home Port Rentals. Id. at 1173 and 1175. In Stanford, the Court held that if a judgment is properly registered in one state pursuant to 28 U.S.C. § 1963, it may be enforced within the limitations period of that registration state, despite the running of the time for enforcement in the rendering state. Explicitly "not[ing] by way of caveat that § 1963 presents much to be answered in the future[,]" then Judge Blackmun "emphasize[d] that [its] conclusion . . . is one having application to the fact situation in this case." Stanford, 341 F.2d at 271 (emphasis added). Indeed, the Stanford Court deliberately left unanswered a "string of hypothetical questions[,]" De Leon I, 742 F.Supp.2d at 1174, the most significant of which, for present purposes, is whether "a registered judgment itself [is] subject to registration elsewhere?" Stanford, 341 F.2d at 271. In carefully limiting its holding, the Stanford Court circumspectly stated that it was "not . . . go[ing] so far as to say that registration effects a new judgment in the registration court for every conceivable purpose; nor do we say that it fails to do so for any particular purpose." Id.

1    Despite that careful limitation, as the *De Leon I* court

2  astutely pointed out, the Fifth Circuit in *Del Prado II*,

3  "cited *Stanford* and other cases . . . , for a broader

4  proposition that 'a registered judgment is equivalent to a new

5  federal judgment.'" *De Leon I*, 742 F.Supp.2d at 1174 (quoting

6  *Del Prado II*, 602 F.3d at 666, citing *Stanford*, 341 F.2d at

7  269-270).   In particular, the Fifth Circuit "fail[ed] to

8  acknowledge that prior precedent equates registered and

9  domestic judgments *only* for purposes of enforcement in the

10  state of registration." *Id.* at 1175 (emphasis added).  As the

11  court in *De Leon I* cogently explained:

12          Cases such as *Stanford* and *Home Port Rentals*
        make clear that, although one might equate a

13          registered judgment with a domestic judgment
        for purposes of enforcement in the state of

14          registration, there is no particular reason
        to conclude that a registered judgment has

15          all of the collateral features of a domestic
        judgment, such [as] the ability to be (re-)

16          registered in yet another jurisdiction.

17  *Id.*   In light of the foregoing, and the other persuasive

18  reasons more fully set forth in *De Leon I*, this court agrees

19  with its assessment that *Del Prado II* "incorrectly applied

20  prior precedent." See *id.* at 1176.    Thus, borrowing the *De

21  Leon I* rationale, this court finds that the Washington

22  Registered Judgment does not have "all of the collateral

23  features of a domestic judgment, such [as] the ability to be

24  (re-) registered in yet another jurisdiction[,]" such as this

25  Arizona District Court.  See *id.* at 1175.

26    Not satisfied with simply explaining its perceived flaws

27  in the *Del Prado II* analysis, the court in *De Leon I*

28  "proceed[ed] to examine . . . anew[]" the issue of whether

- 24 -

1  "registration of a judgment pursuant to 28 U.S.C § 1963
2  create[s] a wholly new judgment that can, in turn, be re-
3  registered to create wholly new judgments in other
4  jurisdictions?"  Id. at 1176; and at 1172.  That examination
5  provides equally compelling reasons why this court is guided by
6  De Leon I and not Del Prado II, as Fidelity urges.

7      As "[c]ases such as *Stanford* and *Home Port Rentals* . . .
8  wisely note," and the court further explained in De Leon I,
9  section 1963's "statutory language does not compel the
10 conclusion that a registered judgment is the equivalent of a
11 domestic judgment for *all* purposes."  Id. at 1175; and at 1176
12 (emphasis in original).  The De Leon I court provided several
13 well-founded "reasons why it is logical to differentiate
14 registered judgments and domestic judgments for purposes of
15 determining which can, in turn, be registered elsewhere."  Id.
16 at 1176.  "First, and perhaps most obviously," the De Leon I
17 court expressed understandable concern that "a rule equating
18 registered and domestic judgments for all purposes allows
19 judgment creditors to avoid any application of statutes of
20 limitation and repose applying to judgments."  Id. "The
21 practical effect" of such "serial registration . . . is that no
22 judgment could ever expire, and that creditors could simply
23 criss-cross the nation, registering and re-registering their
24 judgments in perpetuity."  Id.

25      The present case shows all too vividly how "serial
26 registration" would conflict with Arizona's statute of
27 limitations pertaining to actions on foreign judgments, thus
28 "mak[ing] a mockery out" of that statute.  See id.  In Fidelity

1  V, this court held that "Fidelity permissibly re-registered
2  [the] Arizona [registered] judgment under 28 U.S.C. § 1963 by
3  filing a second Certification of Judgment in this court[.]"
4  Fidelity V, 855 F.Supp.2d at 973 (footnote omitted).
5  Significantly, however, this court also found that re-
6  registration to be untimely under A.R.S. § 12-544(3)[10] because
7  "Fidelity's [First] Arizona [Registered] [J]udgment became
8  enforceable On December 3, 2002[,] . . . ten days after its
9  entry[,]" but "Fidelity did not even attempt to 're-register'
10 its judgment until April 5, 2007[.]" Id. at 978 and 979.
11 Consequently, allowing Fidelity to register the Washington
12 Registered Judgment in this court, where its First Arizona
13 Registered Judgment has been vacated because it was not timely
14 "re-registered," would be allowing Fidelity to circumvent
15 Arizona's statute of limitations  - a result this court cannot
16 condone.

17      Furthermore, allowing Fidelity to register the Washington
18 Registered Judgment in Arizona under the facts of this case
19 would "create the possibility of a cascading fountain of re-
20 registered judgments[,]" which the De Leon I court warned
21 against.  See De Leon I, 742 F.Supp.2d at 1176. As that court
22 rightly foresaw, "[w]hatever uncertainties and difficulties
23 arise from allowing a judgment in one jurisdiction to be
24 registered and enforced in another will be magnified —-
25 potentially exponentially —- when the registered judgment can,

26
27          [10]     Section 12-544(3) requires that an action "[u]pon a judgment
28 . . . rendered without the state" be "commenced ... within four years after
   the cause of action accrues [.]" A.R.S. § 12-544(3).

in turn, be re-registered and enforced elsewhere, independently
of the original judgment." Id. The court went on to
illustrate how that "complexity" would "be further compounded
by the sale of certain judgments to different holders, all of
whom may be seeking to collect against the assets of the
judgment debtor." Id. (footnote omitted).

"Plaintiff's version of the rule," i.e., allowing re-
registered judgments to be re-registered and enforced
elsewhere, independently of the original judgment[,]" would
necessitate "a lengthy, imprecise, and potentially recursive
untangling" of such judgments. Id. By way of example, the
court hypothesized that "a Georgia-registered judgment in
dispute" would have to be "traced back to a Vermont-registered
judgment, which itself derived from a Virginia-registered
judgment, which may be traceable to a different Georgia-
registered judgment, etc." Id. (emphasis in original). Like
the De Leon I court, this court also cannot condone such a "a
web of interlocking and recursive registration, re-
registration, and re-re-registrations[,]" id. at 1177,
especially where, as here, the First Arizona Registered
Judgment was not timely re-registered under Arizona law.

In contrast, one clear advantage of "a scheme in which
only the original judgment can be registered, [is that] every
re-registered judgment relates back to a single source by a
single transaction." Id. This means that "[a] party or court
having concerns about the validity of a registered judgment
need only trace back the matter one level —- from the
registration state to the original judgment." Id. (footnote

1  omitted).  "Satisfaction or partial satisfaction of the
2  registered judgment can be reflected by a notation on the
3  original judgment, supplying notice of partial satisfaction to
4  anyone reviewing the registration of that original judgment in
5  another jurisdiction."  Id.  Thus, "a scheme that treats
6  registered judgments and domestic judgments similarly for in-
7  state enforcement purposes -- thus satisfying the statutory
8  requirements of § 1963 -- but denies registered judgments the
9  capability of being re-registered elsewhere[,]" avoids "[t]he
10  mischief of recursive registration and judgment creation[.]"[11]
11  Id.

12      For all of these reasons, the court finds that Fidelity
13  impermissibly filed the Washington Registered Judgment in this
14  court pursuant to 28 U.S.C. § 1963.  Accordingly, the court
15  hereby **GRANTS** defendants' motion to "vacate the certification
16  of judgment for registration in another district[,]" Mot. (Doc.
17  9) at 1:16-17 filed in this court on July 7, 2011.  The
18  granting of this motion renders moot defendants' secondary
19  argument that because the Washington Registered Judgment "is
20

21       [11]    The last issue addressed in De Leon I was plaintiff's suggestion
22  that the revived Illinois judgment was equivalent to "a 'judgment on a
    judgment.'"  De Leon I, 742 F.Supp.2d at 1177.  Fidelity is not making a
23  similar suggestion in this case. Hence, the court need not consider whether
    the Washington Registered Judgment is equivalent to a judgment on a
24  judgment.  The court observes, however, that the same reasons which
    prevented the De Leon I court from treating the Illinois judgment as a
25  judgment on a judgment preclude treating the Washington Registered Judgment
    as a judgment on a judgment.  More specifically, as in De Leon I, because
26  the Washington Registered judgment "did not include a Summons, Certificate
    of Service, or any other indication" that at the time of registration
27  Fidelity gave notice to defendants of that registration, this court could
    not find that such judgment was equivalent to the Washington court "having
28  duly adjudicated an adversarial proceeding and issued a 'judgment on a
    judgment.'"  See id. at 1178 (footnote omitted).

1  void for lack of due process and personal jurisdiction, it

2  cannot be the basis for the registration of a new judgment in

3  Arizona." See id. at 19:17-18.

4      DATED this 9th day of April, 2013.

5

6

7  _____

   Robert C. Broomfield

8  Senior United States District Judge

9

10

11

12

13

14

15

16

17  Copies to counsel of record

18

19

20

21

22

23

24

25

26

27

28